THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAMÓN GARCÍA, ANTONIO PAGÁN, ISMAEL JIMÉNEZ, ARIEL SERRANO, RAMÓN VIGIO RODRÍGUEZ, Defendants and Appellants.

No. CR-69-88.     Decided March 17, 1970.

838

*Miguel Ángel Salicrup Cabello* for appellants. *Gilberto Gierbolini, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellants were accused of malicious mischief, and all of them, except Ramón García, of assault with intent to commit murder, in agreement and with common accord, and the jury found them guilty of the first offense and of aggravated assault and battery. They were ordered to serve one year in jail for each case except Vigio Rodríguez, who was ordered to serve one year and a half in jail. These sentences were suspended pursuant to Act No. 259 of April 3, 1946 on suspended sentences.

On appeal they assign that the trial court erred in finding guilty (1) Ramón García, known as Ramón Vélez Trinidad, of the offense of malicious mischief when the evidence for the prosecution was of exculpatory nature as to this appellant; (2) the other appellants, of the offense of aggravated assault and battery, when from the same evidence it appears that if anyone committed any offense, it was assault and battery, in view of the nature of the wounds; (3) appellants Pagán, Jiménez, Vigio, and Serrano, of an offense of aggravated assault and battery without having established their guilt beyond a reasonable doubt; (4) appellants, of the offense of malicious mischief without having established, beyond a reasonable doubt, the commission of said offense by appellants; (5) in instructing the jury that Ramón García said "do not hurt him or do not kill him, but take the car away, burn the car," words which were not subject to proof.

The facts of the case are correctly summarized by the Solicitor General as follows:

"Guillermo Pastrana Rodríguez occasionally engaged himself in driving, for pay, one of the American Taxi Cab's taxis. On the date of the events which occurred in this case a certain taxi-drivers union was on strike and mounted pickets in front of the American Taxi Cab. On the night of June 13, 1966, Pastrana Rodríguez was driving one of the taxis belonging to said Company and at about 9:45 p.m. he picked up passenger Iris Selenia Flores in front of the University of Puerto Rico in Río Piedras and took her, according to her indication, to Eduardo Conde Avenue in the corner of the Cemetery in Villa Palmeras. When he stopped in said place to let the passenger off defendants-appellants arrived in a 'station wagon', parked it in front of the taxi, alighted from it and immediately all the defendants-appellants, except Ramón García k/a Ramón Vélez Trinidad, started to beat Pastrana Rodríguez assaulting him with bats, sticks, the fists and the feet. Thus, they put him in the rear seat of the taxi and drove him in the latter to the Isla Verde area, followed by some of the defendants-appellants in the 'station wagon.' In that area they poured gasoline on the taxi, set fire to it, destroying it entirely and after beating Pastrana Rodríguez for a second time they left him there unconscious. The latter had to remain confined in Hospital Universitario for three days and for over a month in the Professional Building under the State Insurance Fund."

1–5. We shall consider jointly the first and last assignments since they refer to appellant Ramón García.

Appellant argues that finding him guilty of malicious mischief does not lie because the evidence showed that he was not present when the other appellants burned the vehicle in Isla Verde area.

He also argues that the trial judge erroneously referred to said appellant's remarks when the first encounter between the prejudiced party Guillermo Pastrana and the appellants occurred on Eduardo Conde Avenue, in the corner of the Cemetery. The trial judge charged the jury that appellant told the others "do not hurt him or do not kill him, but take the car away, burn the car, destroy the car," when Pastrana's testimony on cross-examination was to the effect that appel-

lant said "take the car away and do not beat him," that such instruction seriously impaired appellant and his right to a fair trial since it was not subject to proof during the trial.

It is true that Pastrana testified that García was not among the appellants when they poured gasoline over his vehicle and set it on fire in Isla Verde. But it is not less true that Pastrana testified that prior to the events at Eduardo Conde Avenue he knew appellants because they were going "to go on a strike, to mount pickets" at the premises of their employer, Rafael Cerra, owner of a fleet of taxis, one of which Pastrana was driving on the night of the occurrence which gave rise to this action; that there, "sure I saw them there and I know them all"; that "almost always they were together . . . . Imagine when they were traveling in a bus together"; that when Pastrana stopped the taxi so that the passenger Iris Selenia Flores could alight therefrom on Eduardo Conde Avenue, all the appellants alighted from a station wagon which they parked in front of the taxi and started to beat him, with sticks, except García, who sometime later told the others, according to Pastrana's testimony, "take the car away and do not beat him"; that García did not participate in the beating and he did not accompany the other appellants.

It is inferred from the evidence that the gasoline used to burn the taxi driven by Pastrana was taken there in the station wagon where appellants were traveling because as soon as the appellants seized Pastrana in Eduardo Conde Avenue, they drove his taxi followed by the aforementioned station wagon to a solitary passage in Isla Verde and after removing Pastrana to a distance from the taxi appellant Pagán yelled "bring the gasoline" and then all of them, except one, "were pouring the gasoline from cans and gallon containers all over the taxi." Evidently the gasoline in question had to be transported there in the station wagon where the appellants were traveling and undoubtedly said material was in the station wagon when García arrived in it at Eduardo Conde Avenue

where he alighted together with the other appellants to approach the taxi driven by Pastrana for the purpose of beating and seizing the latter.

■ It seems evident from the foregoing that the appellants' actions responded to a plan previously agreed upon by them in which García participated to the point of being connected with the offense of malicious mischief although he was not physically present. Penal Code, § 36 (33 L.P.R.A. § 82); *People* v. *Aponte González*, 83 P.R.R. 491, 499 (1961); *People* v. *Méndez*, 39 P.R.R. 841, 843 (1929); *People* v. *Paz*, 12 P.R.R. 98, 107 (1907).

■ As to the error in the instructions to the jury with respect to what García said during Pastrana's seizure on Eduardo Conde Avenue, we believe that appellant's substantial rights were not impaired. Said instruction was as follows:

". . . In this case, for example, the evidence shows that one of the defendants, Ramón García, known as Ramón Vélez Trinidad, who is charged with malicious mischief, the evidence shows that he was not present there in Isla Verde, where it is alleged that the offense occurred or that the offense of malicious mischief was committed, now, there is evidence, and you are going to determine whether or not it deserves credit, you are going to weigh it in the sense that this defendant said there on the first occasion during the occurrence on Eduardo Conde Avenue, more or less, the words, *not to hurt him or not to kill him, but take the car away, destroy the car. If you understand that that is true, you give credit to it, if you understand that said evidence is true beyond any reasonable doubt, said evidence would be sufficient to connect said defendant with the offense of malicious mischief, although he was not present in Isla Verde, since the evidence is in the sense that he was not in Isla Verde, that he was on Eduardo Conde Avenue, but that he was not in Isla Verde.*" (Italics ours.)

The evidence as to García's aforesaid remark arose from Pastrana's cross-examination so emphatically that the jury should have recalled it exactly as Pastrana testified it. Fur-

thermore, the rest of the evidence connected García with the burning of the vehicle to the point of supporting the verdict of guilty against him. The instruction was not specific as to the fact that García told them to burn the vehicle. Rather, it indicated to the jury that García uttered *words more or less* to the effect that they should not hurt Pastrana and that they should take the car away, burn it, destroy it. That is to say, that as the judge recalled Pastrana's testimony, the latter said more or less the foregoing. Immediately the trial judge asked the parties whether they desired any special instructions and *the defense answered none.* Therefore, we do not believe that the jury was so susceptible, in view of all the evidence presented before them, that the instruction with respect to the words which "more or less" were uttered by García would affect their mind in such a way as not to be able to return an impartial verdict. *People* v. *Andrades,* 83 P.R.R. 818, 828–829 (1961).

The record shows that when the trial judge concluded his general instructions to the jury, he again invited the representation of the parties to raise any contention with respect to the instructions. The defense did not raise then, as it did not raise before, any objection whatsoever to the improper comment included in the instruction with respect to García's remark nor did it request instructions to cure it. Therefore we understand that the defense waived the contention in question. *People* v. *Maldonado Dipiní,* 96 P.R.R. 874, 880 (1969); *People* v. *López Jiménez,* 96 P.R.R. 129, 134 (1968); *People* v. *del Valle,* 91 P.R.R. 167, 172 (1964).

2.—It is argued that if any offense was committed it was assault and battery, "due to the nature of the wounds."

The parties stipulated that the physician who took care of Pastrana would declare that "he was confined for several days in the hospital showing multiple bruises on his body and that he had a wound on his head and that none of the bruises, in-

cluding the wound on his head was serious, that he did not show any fractured bone."

■ Appellants, except García, were accused of assault with intent to commit murder. The verdict of aggravated assault and battery is included in said charge. Rule 147 of the Rules of Criminal Procedure; *People* v. *Pérez*, 65 P.R.R. 653 (1946).

■ The evidence showed that Pastrana was assaulted with sticks, bats, fists, and feet on Eduardo Conde Avenue and then taken to Isla Verde area where he was again the victim of identical assault until he was abandoned there bleeding and unconscious, as a result of which he was confined for three days in a hospital and for over a month in another. Since in said acts sticks and bats were used as instruments of aggression, the same became deadly weapons. Therefore, the evidence sufficiently supports the commission of the offense of aggravated assault and battery provided in § 6 of the Act of 1904 (33 L.P.R.A. § 826, subdivisions 7, 8, 9). *People* v. *Rodríguez Ocaña*, 88 P.R.R. 325, 328 (1963).

■ 3.—The assignment that the guilt of appellants Pagán, Jiménez, Vigio, and Serrano was not established beyond a reasonable doubt is based on the fact that it was impossible that Pastrana be assaulted by three persons with bats and sticks inside the taxi while the other three were holding him, and on failure of Pastrana to identify appellants.

This assignment is not substantial. Although Pastrana testified on cross-examination that "they hit me in the car, while sitting"; that they stuck the sticks and the bats inside the vehicle and hit me right there . . . I saw about three or four while the others entered the car to hold me" and that later they put him in the rear seat of the taxi and took him away, it may be inferred that they took him out of the vehicle and that while doing so they did not stop assaulting him. It is neither impossible nor incredible that Pastrana was as-

saulted with sticks and bats from outside the car by three or four of the appellants while the others entered the vehicle to hold him, and presumably to force him out and then force him into the rear part of the vehicle. The passenger of the taxi testified that the appellants approached the taxi when she alighted and started to beat Pastrana with sticks while the latter remained sitting in the seat behind the steering wheel. She could see no more.

The evidence also shows that Pastrana knew appellants before the events which gave rise to this case. He identified them on direct examination as well as on cross-examination with certainty and self-confidence. He offered details as to who hit him, who drove the taxi to Isla Verde, who yelled for gasoline. He testified as to the nonparticipation of García in the assault and what he heard the latter say. Later on he identified each and every one of the appellants from a series of photographs at the Public Service Commission.

4.—In support of the assignment that the commission of the offense of malicious mischief was not established beyond a reasonable doubt, appellants argue that although Pastrana testified that appellant Pagán yelled "bring gasoline. . . . Well everybody started to carry the gasoline and the rest who were around me started to beat me with sticks. . . . They left me unconscious"; he also testified that "I did not see either who set the fire, I know that the car was. . . . But I did not see the person who set that car on fire, I did not see him"; that being so near the burnt vehicle he did not testify as to the details of the flames and the glare produced by the alleged burning of the automobile, the noise produced by a burning automobile and the heat resulting from the fire.

We conclude that the evidence supports the verdict of guilty because the jury was justified in concluding that the persons who assaulted Pastrana and took him together with his car to a solitary place in Isla Verde and then proceeded to pour gasoline over the taxi necessarily must be those who set

it on fire, in the absence of evidence that another person or persons not included in. the group of appellants, performed said criminal act.

In view of the foregoing the judgments rendered on February 1, 1967 in this case by the Superior Court, San Juan Part, will be affirmed.

Mr. Chief Justice and Mr. Justice Hernández Matos did not participate herein.